## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **TYRONE ROBINSON WRENCH,** ) | |
| c/o Cornerstone Law Firm ) | |
| 5821 NW 72nd Street ) | |
| Kansas City, MO 64151 ) | |
| ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | |
| ) | **REQUEST FOR JURY TRIAL** |
| **TYSON FOODS, INC.,** ) | |
| *Serve Registered Agent:* ) | |
| The Corporation Company, Inc. ) | |
| 112 SW 7th St., Suite 3C ) | |
| Topeka, KS 66603 ) | |
| ) | |

### COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Tyrone Robinson Wrench, by and through his attorneys, and for his cause of action against Defendant Tyson Foods, Inc., (hereinafter "Tyson" or "Defendant") states and alleges as follows:

### Introduction

1.  This is an employment case based upon the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") and the Americans with Disabilities Act as Amended, 42 U.S.C. §§ 12101 *et seq.* ("ADAAA").

2.  As a result of his wrongful termination, Plaintiff has been damaged and seeks all relief available to him.

### Parties and Jurisdiction

3.  **Plaintiff Tyrone Robinson Wrench** (hereinafter, "Plaintiff") is and was at all relevant times a citizen of Kansas City, Jackson County, Missouri.

4.     **Tyson Foods, Inc.** (hereinafter, "Tyson") is and was at all relevant times a Delaware corporation registered to conduct business in the state of Kansas.

5.     Tyson conducts substantial and continuous business in the State of Kansas.

6.     Specifically, at all relevant times, Tyson conducted business at its facility located at 20701 159th Street, Olathe, Kansas 66062.

7.     At all relevant times, Tyson employed fifteen (15) or more employees.

8.     At all relevant times, Tyson employed fifty (50) or more employees within a seventy-five (75) mile radius.

9.     At all relevant times, Tyson employed more than one thousand (1,000) employees.

10.    At all relevant times, Tyson engaged in interstate commerce.

11.    Tyson is an employer within the meaning of the ADAAA.

12.    Tyson is an employer within the meaning of the FMLA.

13.    Tyson is an entity which acts through its agents. It is liable for the conduct of its agents acting within the course and scope of their agency, its own negligence, the acts of its agents which it knowingly ratifies, injuries incurred by agents' performance of its non-delegable duties, acts done by agents for which the agency relationship allows or assists the agent to perform, and acts taken by its agents by virtue of their position with Tyson.

14.    Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

15.    Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged discriminatory conduct occurred in this District.

## Administrative Procedures

16.     On approximately June 10, 2020, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") naming Tyson Foods, Inc. as the Respondent, alleging disability discrimination and retaliation (attached as ***Exhibit 1*** and incorporated herein by reference).

17.     On or about December 15, 2020, the EEOC issued Plaintiff a Notice of Right to Sue (attached as ***Exhibit 2*** and incorporated herein by reference), and this lawsuit is filed within ninety days of the issuance of the same.

18.     The aforesaid Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be as broad as the scope of an EEOC investigation which could reasonably be expected to have grown out of the Charge of Discrimination.

19.     Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

20.     This action is timely filed within the applicable statutes of limitations.

## Additional Factual Allegations

21.     On or about May 3, 2017, Defendant Tyson hired Plaintiff as a Utility Operator in its distribution center located at 20701 159th Street, Olathe, Kansas 66062.

22.     On or about January 8, 2020, Plaintiff felt sick at work and struggled to breathe.

23.     Plaintiff left work to go to the Emergency Room.

24.     In the Emergency Room, Plaintiff was diagnosed with an upper respiratory infection, high blood pressure, and an enlarged heart.

25.     When Plaintiff returned to work, he continued to suffer the symptoms of his enlarged heart, high blood pressure, and respiratory condition.

26.     Plaintiff suffered from yellowing of the eyes and shortness of breath, which required use of an inhaler.

27.     Plaintiff's health conditions, including but not limited to an enlarged heart and high blood pressure, are each a "disability" as that term is defined in the ADAAA.

28.     Plaintiff's enlarged heart and high blood pressure substantially limited one or more of his major life activities including, but not limited to breathing, performing manual tasks, working, and the major bodily functions of the circulatory and respiratory systems.

29.     Additionally, Plaintiff was regarded by Tyson as disabled and/or has a record or history of said impairment.

30.     Despite his medical condition, Plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation.

31.     Shortly after his ER visit, Plaintiff asked Supervisor Steve VanBeasler ("Supervisor VanBeasler") who he needed to call about Family Medical Leave Act ("FMLA") leave.

32.     However, Supervisor VanBeasler would not give Plaintiff the number of Defendant's FMLA contact and said he allegedly "could not find" the information.

33.     During this conversation, Plaintiff also disclosed to Supervisor VanBeasler that he was diagnosed with an enlarged heart.

34.     Although Tyson was aware of Plaintiff's disability, it did not initiate the interactive process with Plaintiff regarding a reasonable accommodation.

35.  On or about January 17, 2010, Plaintiff spoke with Human Resources Generalist Lisa Padilla ("HR Representative Padilla") about starting the application process for FMLA leave related to his serious medical conditions.

36.  Plaintiff submitted his application for intermittent FMLA leave through Defendant's third-party FMLA administrator, Unum.

37.  Plaintiff had FMLA-related absences on January 18, 2020, and January 22, 2020, due to his disabilities.

38.  However, Plaintiff accrued attendance points for both days, which put him half a point over the maximum points allowed by Defendant's attendance policy.

39.  On or about January 24, 2020, Plaintiff expressed his concerns about the points to Supervisor VanBeasler and explained that he missed those days for FMLA-related reasons.

40.  Supervisor VanBeasler told Plaintiff the points would go back down once his FMLA leave was officially approved.

41.  Plaintiff had two (2) more FMLA-related absences on or about January 25, 2020, and January 29, 2020.

42.  Each time Plaintiff called in for FMLA, he notified Tyson by leaving a message on the call-in line and indicated that his absence was for FMLA leave.

43.  On or about February 18, 2020, Unum sent Plaintiff a letter notifying him that his intermittent FMLA leave was approved from January 8, 2020 through July 7, 2020.

44.  However, on or about February 18, 2020, Plaintiff received a second letter from Unum stating that his intermittent FMLA leave on the four (4) dates he missed in January of 2020 were denied by Defendant.

45.   The proffered reasons for Plaintiff's FMLA denial was because he "did not provide notice of [his] absence within the timeframe required by [his] employer."

46.   That same day, on or about February 18, 2020, Tyson terminated Plaintiff's employment for allegedly exceeding the allowable number of attendance points, even though Tyson knew of Plaintiff's disabilities and that he was approved for intermittent FMLA leave.

47.   Prior to Plaintiff's termination, he did not receive write-ups regarding attendance issues.

48.   On information and belief, Tyson's proffered reasons for terminating Plaintiff are pretextual, and the true reasons are unlawful discrimination and retaliation as set forth below.

**COUNT I**
**Violation under 42 U.S.C. §§ 12101 *et seq*.**
**Disability Discrimination - Failure to Accommodate**

49.   Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all of the above numbered paragraphs.

50.   At all relevant times, Plaintiff suffered from serious medical conditions, including an enlarged heart and high blood pressure.

51.   At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because his enlarged heart and high blood pressure substantially limited one or more of his major life activities including, but not limited to breathing, performing manual tasks, working, and the major bodily functions of the circulatory and respiratory systems, as described in the ADAAA.

52.   At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because Tyson regarded Plaintiff as having a disability and/or had a record of Plaintiff's disability.

53.  At all relevant times, Plaintiff was a qualified individual pursuant to the ADAAA because he could perform the essential functions of his job with or without reasonable accommodation.

54.  Rather than provide Plaintiff a reasonable accommodation(s) in the form of intermittent time off work, Tyson terminated his employment altogether.

55.  Allowing Plaintiff any of the above-referenced accommodations, without reprisal, would not have been an undue burden for Tyson.

56.  Tyson refused to engage in the interactive process with Plaintiff to determine reasonable accommodations for his disabilities, including an enlarged heart and high blood pressure.

57.  In refusing to allow Plaintiff to take intermittent time off from work as needed,  without reprisal, Tyson failed to accommodate Plaintiff.

58.  At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Tyson, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Tyson, thus making Tyson liable for said actions under the doctrine of *respondeat superior*.

59.  Tyson failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

60.  Tyson failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

61.  As shown by the foregoing, as a result of his request for accommodation, Plaintiff suffered intentional discrimination at the hands of Tyson in violation of the ADAAA.

62.   As a direct and proximate result of Tyson's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

63.   As a further direct and proximate result of Tyson's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

64.   Tyson's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Tyson or to deter Tyson and other entities from similar conduct in the future.

65.   As a further direct and proximate result of Tyson's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

66.   Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Tyson.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant Tyson for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT II</u>**
**Violation under 42 U.S.C. §§ 12101 *et seq*.**
**ADAAA Disability Discrimination - Termination**

67.     Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all of the above numbered paragraphs.

68.     At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because his enlarged heart and high blood pressure substantially limited one or more of his major life activities including, but not limited to breathing, performing manual tasks, working, and the major bodily functions of the circulatory and respiratory systems, as described in the ADAAA.

69.     At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because Tyson regarded Plaintiff as having a disability and/or had a record of Plaintiff's disability.

70.     At all relevant times, Plaintiff was an individual with a disability pursuant to the ADAAA because Tyson regarded him as having a physical impairment that substantially limited one or more of his major life activities.

71.     At all relevant times, Plaintiff was a qualified individual pursuant to the ADAAA because he could perform the essential functions of his job with or without reasonable accommodation.

72.     In terminating Plaintiff's employment, Tyson subjected Plaintiff to an adverse employment action.

73.     Plaintiff's disability was a motivating or determining factor in Tyson's decision to terminate his employment.

9

74.    At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Tyson, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Tyson, thus making Tyson liable for said actions under the doctrine of *respondeat superior*.

75.    Tyson failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

76.    Tyson failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

77.    As shown by the foregoing, as a result of his termination, Plaintiff suffered intentional discrimination at the hands of Tyson in violation of the ADAAA.

78.    As a direct and proximate result of Tyson's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

79.    As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

80.    Tyson's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Tyson or to deter Tyson and other entities from similar conduct in the future.

81.    Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Tyson.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant Tyson for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III
### Violation under 42 U.S.C. §§ 12101 *et seq*.
### ADAAA Retaliation

82.     Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all of the above numbered paragraphs.

83.     Plaintiff engaged in a protected activity under the ADAAA by requesting reasonable accommodations from Tyson for his disabilities (*i.e.*, an enlarged heart and high blood pressure), including intermittent leave.

84.     Tyson ultimately terminated Plaintiff, on or about February 18, 2018, as a result of Plaintiff's above-referenced protected activities.

85.     Plaintiff's requests for reasonable accommodation constituted a motivating or determining factor in Tyson's decision to take adverse actions against Plaintiff.

86.     At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Tyson, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Tyson, thus making Tyson liable for said actions under the doctrine of *respondeat superior*.

11

87.    Tyson failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees.

88.    Tyson failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the ADAAA.

89.    As shown by the foregoing, as a result of his termination, Plaintiff suffered intentional discrimination at the hands of Tyson in violation of the ADAAA.

90.    As a direct and proximate result of Tyson's actions and/or omissions, Plaintiff has been deprived of income as well as other monetary and non-monetary benefits.

91.    As a further direct and proximate result of Tyson's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

92.    Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Tyson or to deter Tyson and other entities from similar conduct in the future.

93.    Pursuant to the provisions of the ADAAA, Plaintiff is entitled to recover reasonable attorneys' fees from Tyson.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant Tyson for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
### Violation under 29 U.S.C. § 2615(a)(1)
### FMLA Interference

94.     Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all of the above numbered paragraphs.

95.     At all relevant times, Plaintiff was an eligible employee pursuant to the FMLA.

96.     At all relevant times, Plaintiff suffered from serious medical conditions, including an enlarged heart and high blood pressure.

97.     By terminating Plaintiff's employment, Tyson interfered with Plaintiff's right to take FMLA leave.

98.     A causal connection exists between the aforementioned adverse actions and Plaintiff's exercise of his FMLA rights.

99.     At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant Tyson, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Tyson, thus making Tyson liable for said actions under the doctrine of *respondeat superior*.

100.    Tyson failed to make good faith efforts to establish and enforce policies to prevent violations of the FMLA.

101.    Tyson failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the laws, including the FMLA.

102.    By failing to take prompt and effective remedial action, Tyson, in effect, condoned, ratified, and/or authorized the FMLA violation against Plaintiff.

103.    As a direct and proximate result of Tyson's actions and/or omissions, Plaintiff has been deprived of income, as well as, other monetary and non-monetary benefits.

104.    As shown by the foregoing, Tyson's conduct was not in good faith, and Tyson did not have reasonable grounds for believing that the act or omission was not a violation of the FMLA.

105.    Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Tyson.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Tyson for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**<u>COUNT V</u>**
**Violation under 29 U.S.C. § 2615(a)(2)**
**FMLA Retaliation - Termination**

106.    Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, all of the above numbered paragraphs.

107.    At all relevant times, Plaintiff was an eligible employee pursuant to the FMLA.

108.    At all relevant times, Plaintiff suffered from serious medical conditions, including an enlarged heart and high blood pressure.

109.    Plaintiff engaged in a protected activity when he inquired about his vested rights pursuant to the FMLA.

110.    Plaintiff engaged in further protected activity when he applied and was approved for intermittent leave pursuant to the FMLA, and utilized his right to take said FMLA leave.

111.   Plaintiff suffered an adverse employment action when Tyson terminated his employment on or about February 18, 2020.

112.   Plaintiff's exercise of his FMLA rights was a motivating or determining factor in Defendant's decision to terminate his employment.

113.   At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Tyson, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Tyson, thus making Tyson liable for said actions under the doctrine of *respondeat superior.*

114.   By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized the FMLA violation against Plaintiff.

115.   As shown by the foregoing, Tyson's conduct was not in good faith, and Tyson did not have reasonable grounds for believing that the act or omission was not a violation of the FMLA.

116.   As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as, other monetary and non-monetary benefits.

117.   Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant Tyson for economic damages, including but not limited to back-pay and lost benefits; for equitable relief, including but not limited to front-pay and injunctive relief; for liquidated damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

15

**<u>Demand for Jury Trial and Designation of Place of Trial</u>**

Plaintiff requests a trial by jury in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: _/s/ Jessica M. McDowell_____

Ryan M. Paulus          D. Kan. #78276
r.paulus@cornerstonefirm.com
Jessica M. McDowell      D. Kan. #78731
j.mcdowell@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone              (816) 581-4040
Facsimile              (816) 741-8889

ATTORNEYS FOR PLAINTIFF